Good afternoon, docket. 515-0001, people v. Jennifer Akes. Is it Ms. Nam or Son-Nam? Yes. Ms. Nam. Okay. May it please the Court. Counsel. Assistant Appellate Defender and Son-Nam on behalf of Jennifer Akes. The issue before the Court is whether the trial court erred in denying Ms. Akes' motion to withdraw her guilty plea, where the plea was rendered unknowing and involuntary based on plea counsel's erroneous advice that the trial court was required to sentence her to task probation, that she was guaranteed task probation. There are three parts to our argument. The first part is that plea counsel was ineffective. To establish an effective assistance of counsel, Ms. Akes must establish that plea counsel's performance was deficient and that she was prejudiced by a counsel's deficient performance. And as to this deficient performance, it's objectively unreasonable for an attorney to misadvise his client. But that's what's happened here. Specifically, plea counsel misadvised Ms. Akes and told her that she was guaranteed task probation. Plea counsel, after conveying the State's initial offer of three years in prison at their first meeting and discussing other possible sentences, told her that he would not let her take the State's offer of three years. Rather, he said by statute, under the law, the trial court was required to give her task. And the State's allegation and her testimony related to plea counsel's ineffectiveness was undisputed. Well, what about the fact that the judge kept saying something different? Why didn't she raise that issue? Why didn't she ask the question? Well, Your Honor... Do you think she has some obligation to do that? Well, Ms. Akes was informed by plea counsel, and she testified later on, that she thought that this was a formality, that the trial court had to tell her, you know, the range of sentencing, but because of her unique circumstances, where she was found by task to, where she was accepted by task, where task found that there was a nexus between the offense and her addiction, and that task found her having potential rehabilitation potential, that in her situation, she was guaranteed task under the statute. So where counsel told her that it was mere, it was a formality, she didn't have any duty to inquire. This was a lady, though, that had been around the block. She had 14 prior convictions. She did, Your Honor. Was she on a PlayStation? She did, Your Honor. But she had prior drug assessments that were ordered by the court, but from the record, it seems like this was her first time in task. So there were other drug assessments, and I think the trial court did note, you know, she only participated in these drug assessments when the court mandated her to do so, but here it was the first time that she would have been given task. And where counsel told her that the trial court will give you these range of sentences, but you are guaranteed task, it's hard to rebut this misadvice by counsel. It was also interesting to me that the counsel didn't testify. Yes, Your Honor. So counsel was subpoenaed. Yes, Your Honor. He was subpoenaed, but Ms. Akes didn't have a duty to call him when her testimony itself was sufficient. So she went on the stand, told the court I was told that I was guaranteed task, that the state initially offered us three years, but counsel told me that he wasn't going to let me take it because I was guaranteed task under my circumstances. And that's kind of what happened here. She entered an open guilty plea instead of accepting the state's offer of three years, and she was actually sentenced to the max. And she entered the open guilty plea based on the plea counsel's advice entirely. Do you think her credibility is an issue? You say she doesn't have to call the plea counsel, but she clearly has a credibility problem in light of the premise. That's correct, Your Honor. But once she testified, she established the wrong advice, and she established the prejudice that she would have taken the three years rather than the six years that she ultimately got because she relied on counsel's advice. She relied entirely on his advice in entering that open guilty plea. Except the problem here is that when she entered that open guilty plea, she was at the discretion of the court. So the court at that point had discretion to sentence her to probation, but up to six years in prison, and that's what she ultimately got. I'd like to ask a question. Did she reject the plea before she was deemed eligible? So that's a little bit of a matter of contention here. But ultimately, her allegation is that she relied on his advice that she was going to get tasked. So the timing, I think, depending on the timing, it supports her, it strengthens her allegation. But ultimately, her allegation is that counsel told her that he wasn't going to let her take the plea of three years, and that once she entered the open guilty plea, that she would be given tasks because, you know, pursuant to the statute, which was incorrect advice. So the timing itself may not be absolutely clear here, but it's not as relevant because her allegation is saying that she relied on counsel's advice, wrong advice. And to kind of go with that, to give counsel credit, regardless of when he told her this, his actions supported what he said. So he meant what he said. He got her a Marion County Drug Court referral, and she was initially accepted, although the state ultimately rejected that. So she wasn't part of the program, but counsel also got her a task evaluation. So after TASC completed the comprehensive assessment, the report showed that she was an addict. She did have a drug addiction. I think it was cocaine and marijuana, and that her addiction was linked to the offenses. And thereafter, I think the evaluator found that Ms. Akes was willing to accept that she had a substance abuse problem, and she was willing to work at it and thought that treatment would be helpful. So they found that she had rehabilitative potential. Ultimately, the state didn't agree with TASC's probation, but this is what led to plea counsel's misadvice, that since she couldn't get the state to agree, she should enter an open plea. At that point, the trial court was mandated by statute to give her a task. And this makes sense. You know, TASC found that all the requirements were there, that she was acceptable, but that's the problem as well, because the trial court was the one that had to make this finding. According to People v. Demsko, the trial court was required by statute had he found all of these requirements were met. And this is where we're at. Can you repeat that? You said the trial court was required to, but you didn't tell me to do what? Pursuant to Demsko, if the trial court makes findings of her having an addiction, there being a nexus, and that her having rehabilitative potential, the statute stated that the trial court shall. So there's a purpose of the statute, and so there's no discretion. Well, there's still discretion in that the trial court for, I think there's a list later saying, if the trial court for some reason found that she was a threat to the community or something like that, where probation would not be helpful to the community, the trial court has discretion there. But the Demsko court did state that courts should err on the side of finding the defendant, helping the defendant become a better member of society by helping them rehabilitate. And counsel here is where he makes the biggest leap. He makes all these assumptions, and that's supported by his argument at sentencing where he says, it's clear that she has, you know, that the nexus is met, that she has an addiction, that, you know, she has really rehabilitative potential, and counsel says it's clear. And that's where he made this assumption, and that's why mistakes allegation is supported by his argument at sentencing. Mistakes is also prejudice, and that prejudice is apparent here because she would have taken the three years rather than the six years. She stated that she relied entirely on counsel's advice, and this is wrong advice. And the disparity between the sentence that she ultimately got, which was the maximum of six years, was significantly different than the three years that the state had originally offered, but she rejected based on counsel's advice. I'm looking at your brief. I don't see the stem scope page. It should be in the reply brief, Your Honor. There's no further questions. Thank you. Thank you. Is it Mr. Sienna? Sierra, Your Honor. Sierra. Okay. Mr. Sierra. May I please the court, counsel? The trial court did not abuse its discretion in denying the defendant's motion to withdraw her guilty plea because the defendant did not meet either prong of Strickland's two-part test to establish ineffectiveness of counsel. The state will address each prong in turn. First, as to the performance prong, there is no indication in the record that plea counsel's performance fell below an objectively reasonable standard. The allegedly erroneous advice that plea counsel provided is simply not part of the record, and while it is difficult for the state to prove a negative, that is, to prove that this allegedly erroneous advice was given to the defendant, this is precisely why it is the defendant's burden to establish this ineffectiveness. What about the belief that the client was entitled to task when, in fact, the client may not have been? Your Honor, at closing arguments on the day of the sentencing hearing, plea counsel argued that, excuse me, accurately represented the task statute to the court and argued each of the elements accurately. Plea counsel argued that there must be a nexus between the addiction and the crime, so that knowledge that counsel established at the sentencing hearing makes it increasingly unlikely that counsel would have misadvised his client as to the requirements for task probation. I don't understand that at all. I don't understand what you're saying. It makes it more, in my mind, it makes it more likely. I'm sorry, Your Honor. Could you go over that again, please? Sure. Because plea counsel accurately represented the task probation statute at the sentencing hearing, that makes it more likely that he did not misrepresent the statute at any other part in his representation of the client. So he would have told her that she's entitled to task. No, he would have explained that it was discretionary. Because he explained that it was discretionary to the trial court at sentencing hearing, he explained that there had to be a nexus between the addiction and the crime. But he argued there was a nexus. He did argue there was a nexus, but that does not mean that the nexus actually occurred, Your Honor. While it was certainly the defendant's position that there was a nexus, it was the explicit ruling of the trial court that no such nexus existed due to the previous attempts at rehabilitation. You know, but we're stuck with the record as we look at what defense counsel said. And there were certain comments made that could allow one to conclude that he believed she was tasked, not only task eligible, but required the allowed task intervention. Your Honor, the state's position is that the defendant was task eligible, and the court acknowledged that the defendant was task eligible. And that is not really at issue in this case. It's simply whether or not the trial court was required to sentence the defendant to task probation. And nothing in the record confirms or corroborates this idea that the plea counsel guaranteed task probation other than the defendant's self-serving testimony. As the court alluded to in the defendant's argument, the defendant never called her plea counsel in the post-sentencing hearing. If this misadvice did take place, it is the defendant's burden to establish that this actually occurred. Nothing but her own testimony establishes that. And as the court noted in People v. Hale, a defendant's self-serving testimony alone is not enough to establish the prejudice that allegedly occurred here. So it's your position that she was required to call counsel? No, Your Honor, she was not required to call counsel, but the defendant was required to prove the elements of her claim. How could she have proved the elements without calling him other than her self-serving statement? In this case, Your Honor, perhaps even an affidavit from a plea counsel, or if the timing of the applications to task probation and to the drug court had perhaps come after she had declined this three-year offer, that may have been some sort of corroboration that once she had been denied drug court, then maybe we would have seen some potential for prejudice. But because she had not been denied participation in the drug court, had not been denied task probation, there's just no indication that it was reasonable for her to accept a three-year sentence when she had these options for drug court and task probation. So because there's simply no corroboration of the ineffective assistance, the failure to call her plea counsel is all the more damning in this case. In addition, returning to the performance prong, the allegedly erroneous statements occurred very early in the relationship, and after which time the defendant repeatedly acknowledged that she was not guaranteed task probation. So there are at least four occurrences in which she acknowledged the possibility of a prison sentence, the first being the three different times that she was admonished by the trial court that she faced a six-year prison sentence, and on each occasion the defendant indicated that she understood the potential sentence. Second, in the pre-sentence investigation interview, the defendant indicated she merely hoped that she would be sentenced to task probation. This interview occurred after her first meeting with her plea counsel, so there's no reason that she would have said she just hoped for task probation if it had been guaranteed to her. She also discussed the potential consequences of a prison sentence during that PSI interview and indicated she might lose her children if she were sentenced to prison. Third, at the sentencing hearing itself, the defendant indicated that she asked the trial court for task probation. She didn't indicate that this was something that was guaranteed to her. She was applying and falling on the mercy of the court at that occasion. And fourth, after the six-year sentence had been imposed, the defendant wrote a letter to the trial court in which she acknowledged the court's discretion to sentence her to the maximum sentence available at the law and indicated she thought six years was simply too harsh a sentence. Furthermore, plea counsel—we already covered that point, I'm sorry. And as the court acknowledged earlier, the defendant's credibility was impaired by that original claim that plea counsel had never notified her of the state's plea offer of three years. That was the content of her letter to the court after she received six years. So these are two incompatible factual scenarios. Either she was not made aware of the three-year offer from the state or she was guaranteed task probation, and that's why she decided to turn down that three-year offer. Those contradictory statements really undermined her credibility before the trial court. Turning now to the prejudice prong of Strickland, even if plea counsel did provide this allegedly erroneous advice, the defendant displayed an actual knowledge of her potential sentencing range, as we just discussed in each of those four settings. Despite the appointment of a post-plea counsel after she made her claims of ineffective assistance, in an independent hearing at which she could present evidence as to this ineffective representation, the defendant provided no evidence other than her own testimony to support her claim. Her indication that she would have accepted the three-year offer from the state was not accompanied by any other evidence other than that own self-serving testimony, which, according to the Hale court, is simply not sufficient. Furthermore, there is no record of the plea offer that the defendant argues, the declining of which constituted the prejudice in this case. The timing, because there's not enough detail to determine when precisely she turned down this three-year offer, it makes it even more difficult to determine whether or not the prejudice could have occurred. If that occurred after she had been turned down for castigation or whatever, the timing of that certainly affects the credibility of her claim that she would have accepted that three-year offer. Again, it makes no sense for her to take an offer of three years when she had the potential for probation or drug court. I see that my time has expired. Thank you. Thank you very much. Ms. Nahum? I would just like to address four points very quickly. Yes, please, Laura. Yes. The state argues that the three-year offer isn't on the record, but this three-year offer was all that they argued post-plea. The state never denied that below. They could have easily done that below if the three-year offer was never on the table. Second, the state talks about Ms. Aik's statements to the PSI author. If you look at the PSI carefully, the author put in quotes, direct quotes from Ms. Aik's. Otherwise, the rest of it is kind of her words, what she wrote down. So I think Your Honor should carefully look through the PSI. Does it say that she's hoping for that? In the PSI, the author did write Ms. Aik's hopes for it, but we don't know, not in quotes. Not in quotes. Other things are in quotes, but if you look through the PSI, it shows that. And there's a little bit of an issue with Ms. Aik's letter to the court. It states that she's never aware of the state's offer of 30 months. So that's different than the three-year initial offer. There's nothing else on the record. And she focused entirely post-plea about the three years, that initial offer that she was given. So there's nothing else on the record about that. But 30 months and three years is half a year difference. So that's something to note as well. And in the opening brief on page 13, Ms. Aik talks about the fact that there's no formal court proceedings when a defendant rejects an offer. So this is what happens behind the doors with counsel. But this is where the assistance of counsel is most needed, where this is behind doors. Counsel is giving her all this advice that she needs to follow in order for her to get the best result possible. And the issue here is that this is private. This is a private conversation. But plea counsel's argument at sentencing does show a lot that he assumed a lot because he relied on TASC. And TASC was so favorable to her. So we argue that in the end, because he relied on TASC, TASC found that all three requirements were met. His arguments at sentencing supports her allegation of his ineffectiveness. Unless there's any other questions, Ms. Aik asks that this court vacate the court's denial of her motion to withdraw and remand for further proceedings. Thank you very much. Thank you. Thank you. Okay. Ms. Maddow will be taken under advisement, and this decision will be issued in court.